UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

NANCY H. JONES,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

Case No. 1:24-CV-473 JD

**OPINION AND ORDER**

    Plaintiff Nancy Jones appeals the denial of her claims for disability insurance benefits under Title II and supplemental security income and under Title XVI of the Social Security Act. For the reasons below, the Court will remand this case to the Agency for additional consideration.

**A. Procedural Background**

    Plaintiff initially filed an application for disability insurance benefits in January 2019. The claim was denied in September 2020, culminating in an appeal to the district court and a stipulated remand. (R. at 1224–29.) On remand, Administrative Law Judge ("ALJ") Terry Miller held a new hearing and subsequently issued another unfavorable decision in June 2023. (R. at 1070–90.) The Appeals Council denied Plaintiff's request for review, after which Plaintiff filed this action.

**B. Standard of Review**

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The threshold for substantial evidence 'is not high.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024) (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019)). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Still the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant and the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ

2

must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

**C. Standard for Disability**

Disability benefits are available only to those individuals who can establish disability under the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). The claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;
2. Whether the claimant has a medically severe impairment;
3. Whether the claimant's impairment meets or equals one listed in the regulations;
4. Whether the claimant can still perform past relevant work; and
5. Whether the claimant can perform other work in the national economy.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity,

which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. §§404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

### D. The ALJ's Decision

In finding that Plaintiff was not disabled, the ALJ employed the customary five-step analysis. At step two, he found that Plaintiff suffered from the following severe impairments: "degenerative disc disease of the lumbar spine, with lumbar radiculopathy / bilateral sacroiliitis / chronic pain syndrome relating to the back; degenerative disc disease of the cervical spine, with myalgias of the cervical spine muscle / cervicalgia; history of work-related right foot injuries / multiple foot fractures, status post arthrodesis surgery in January 2017, and requiring another fusion surgery in January 2022; and obesity." (ALJ's Decision, R. at 1076.) At step three, the ALJ concluded that Plaintiff "does not have an impairment or impairments or combination of impairments that meets or medically equals the severity of [a Listing]." (*Id*. at 1079.)

In his decision, the ALJ recounted Plaintiff's testimony at the two hearings. The ALJ noted that Plaintiff testified during the initial hearing that she stopped working because of pain and her inability to stand, walk, or sit for extended periods. She reported experiencing back and

neck pain, requiring her to lie down or sit in a recliner to alleviate the pain. Plaintiff also said that she experiences leg numbness daily, that it takes her five minutes to walk a block, and that to walk around the block she has to stop several times. Plaintiff testified that she can stand and sit for only five minutes; can lift and carry only five pounds; she is unable to bend at the waist, or climb stairs. (*Id*. at 1080.)

At the second hearing, Plaintiff reiterated her inability to sit for more than five minutes and reported ongoing low back, neck, and foot pain. She testified that she elevated her foot, experienced daily migraines, and had pain radiating into her legs, spending most of her day in bed. Plaintiff further stated that she required assistance with personal care, had difficulty sleeping, could not lift more than seven pounds, had high blood pressure, and often dropped objects. (*Id*.)

The ALJ found that Plaintiff's medical condition could reasonably account for the symptoms she described. Even so, he concluded that her statements regarding the severity, persistence, and limiting effects of those symptoms were not fully consistent with the medical and other evidence in the record. The ALJ noted that Plaintiff's assertion of being essentially bedridden was unsupported by the evidentiary record. According to the ALJ, the medical records consistently indicated that Plaintiff was not in acute distress and that her functioning remained stable throughout treatment. The ALJ further pointed out that her normal gait, intact sensation, and ability to perform activities such as walking and household chores were inconsistent with her claims. As the ALJ observed, "[w]hile not prima facie evidence of non-disability, this [evidence] is grossly inconsistent with the claimant's allegations of being essentially bedbound." (*Id*. at 1085.) Additionally, despite abnormal spine imaging, the ALJ found that Plaintiff's treatment

5

had been conservative, and her work history in medium-duty jobs until 2018 indicated a greater functional capacity than she alleged. (*Id*. at 1084–1085.)

The ALJ also considered the medical opinions and prior administrative medical findings. Pivotal to the ALJ's decision is the opinion of Dr. John Kwock, an orthopedic surgeon with over thirty years of experience, who testified at the second hearing as an impartial expert. He testified that Plaintiff was limited to less than the full range of light work. As relevant here, he opined that she could lift up to 25 pounds occasionally and 10 pounds frequently, and could sit for 8 hours during the 8-hour workday, and stand/walk for 4 of those hours. (R. at 1121–22.) Regarding "chronic pain syndrome," Dr. Kwock described the term as broad and generic, lacking specific medical elements. Relatedly, he noted that there was no diagnosis of Reflex Sympathetic Dystrophy Syndrome or Complex Regional Pain Syndrome in the record, nor were the "Budapest" diagnostic criteria or autonomic dysfunction signs present. (R. at 1123–25.)

Dr. Kwock responded to questions about limitations asserted by treating physician Dr. Charles Lindzy, stating that limitations such as the inability to stand or walk upright for very long were unsupported by the objective evidence in the record. Further, Dr. Kwock disagreed with Dr. Lindzy's statements that lumbar Schmorl's nodes caused significant pain and limitation, characterizing Schmorl's nodes as early degenerative findings that are not themselves unusual or indicative of advanced problems.

The ALJ found Dr. Kwock's testimony that Plaintiff's "conditions limited her to less than the full range of light work [to be] persuasive." (*Id*. at 1087.) The ALJ explained that Dr. Kwock's limitations are supported by Dr. Kwock's review of the record[1] and aligned with

---

[1] As the Commissioner notes, there were some treatment notes not available to Dr. Kwock before the hearing. (Def.'s Resp. Br., DE 17 at 5 n.2) These included pain management notes from August 2022 to February 2023 (R. at 2087–2122); a letter from Plaintiff's pain management provider, which the ALJ read into the record for Dr. Kwock's benefit (R. 1119–20, 2123); and records of Plaintiff's successful right foot surgery (Tr. 2024-2177).

recurring findings in the medical evidence, such as tenderness and positive straight leg raise tests, as well as findings of no acute distress, normal gait, full strength, and normal neurological functioning. (*Id.*) The ALJ concluded that Dr. Kwock's testimony was more consistent with the objective medical record than the opinions of Dr. Lindzy, Plaintiff's treating physician. (*Id.*)

Among others, the ALJ also considered the opinions of consultative examiners, Drs. Trenton Schmale and Alicia Julovich, who examined Plaintiff in March 2019 and October 2021, respectively. Dr. Schmale opined that Plaintiff's back pain "could impair ability to work in a job that requires heavy lifting, walking or standing regularly, [or] climbing stairs or ladders." (R. at 981.) The ALJ found this opinion vague but persuasive due to its consistency with examination findings and the overall record. (ALJ's Decision, R. at 1086.) On the other hand, the ALJ found that Dr. Julovich's opinion—that Plaintiff could stand or walk for at least 2 hours in a workday, but not continuously—had only "limited persuasive value." (*Id.* at 1087.) The ALJ stated that the opinion relied on Plaintiff's subjective claims and was only partially supported by her examination and treatment notes. (*Id.* at 1086–87.) The ALJ also noted that Plaintiff refused to perform certain tests (heel, toe, and tandem walking), without showing that she was unable to do so.

The ALJ concluded that Plaintiff had the residual functional capacity ("RFC")[2] to perform light work[3] . . . except that [she] can stand/walk, in combination, only four of eight

---

But Plaintiff has not argued that Dr. Kwock's opinion was less reliable because he did not see these notes or that a review of these records would have altered his opinion in any way.

[2] "The RFC reflects 'the most [a person] can still do despite [the] limitations' caused by medically determinable impairments and is assessed 'based on all the relevant evidence in [the] case record.'" *Cervantes v. Kijakazi*, No. 20-3334, 2021 WL 6101361, at *2 (7th Cir. Dec. 21, 2021) (quoting 20 C.F.R. §§ 404.1545, 416.945(a)).

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the

hours in an eight-hour workday." (*Id.* at 1079.) The ALJ also found that Plaintiff is subject to various nonexertional limitations (such as limitations on climbing of ramps, stairs, and ladders; using foot controls; or being exposed to hazards) which are not at issue here.

The ALJ posed a hypothetical question to the vocational expert ("VE") based on his RFC findings. The VE testified that there are jobs in the national economy in significant numbers that a hypothetical person with Plaintiff's RFC could perform: inspector/hand packager, mail clerk, and hospital products assembler. (*Id.* at 1089.) The ALJ accepted the VE's testimony, ultimately concluding that Plaintiff was not disabled. (R. at 1090.)

**E. Discussion**

Plaintiff makes a twofold argument. First, she argues that the ALJ failed to build a logical bridge between the evidence in the record and the conclusion that the RFC did not require a sit/stand option. She highlights that both consultative examiners, Drs. Schmale and Julovich, noted limitations in sustaining prolonged walking or standing and insists that no medical opinion contradicts these assessments.

Second, Plaintiff contends that her functional report and testimony corroborate the need to alternate positions to mitigate pain, which the ALJ did not adequately address. She also asserts that the ALJ improperly relied on her past work performance before the alleged onset date, ignoring evidence of a gradual worsening of her condition.

**(1)** *Medical Opinions of the Consultative Examiners*

---

ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567.

"[E]ven under [the] deferential standard of review, an ALJ 'must provide a logical bridge between the evidence and [her] conclusions.'" *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (quoting *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021)). That's a shorthand term for the requirement "that ALJs provide an explanation for how the evidence leads to their conclusions that is 'sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1054 (7th Cir. 2024) (quoting *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014)). "In other words, as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). "That logical bridge can assure a reviewing court that the ALJ considered the important evidence and applied sound reasoning to it." *Moy v. Bisignano*, 142 F.4th 546, 552 (7th Cir. 2025). "We review the ALJ's decision holistically to determine whether the ALJ grappled with evidence favorable to the claimant, but we will not reconsider facts, reweigh evidence, or resolve conflicts." *Chrisman on behalf of N.R.C. v. Bisignano*, 137 F.4th 618, 624 (7th Cir. 2025) (citations omitted). Importantly, while the requirement for the ALJ to build a "logical bridge" between the evidence and their conclusions is a critical safeguard, it does not change the deferential nature of the substantial-evidence standard of review. *See Brumbaugh v. Saul*, 850 F. App'x 973, 977 (7th Cir. 2021) ("[T]he 'logical bridge' language in our caselaw is descriptive but does not alter the applicable substantial-evidence standard." (citing *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019)).

Based on this legal standard, the Court finds that the ALJ did not provide adequate reasoning that would allow this Court to assess the validity of his RFC assessment and failed to

ground his decision on substantial evidence. In particular, the ALJ failed to explain why he did not account in the RFC for Dr. Schmale's opinion that Plaintiff's lumbar conditions could impair her ability to perform work requiring "walking or standing regularly," even though he found the opinion persuasive, albeit vague. The opinion, which the ALJ accepted, suggests that Plaintiff may need a sit/stand option, but neither the RFC nor the discussion surrounding it touches on this question.

Dr. Schmale opined that Plaintiff's "lumbar back pain secondary to degeneration of lumbar and lumbosacral intervertebral disc, spinal stenosis, and herniated disc could impair [her] ability to work in a job that requires heavy lifting, walking or standing regularly, climbing stairs or ladders due to pain in back." (ALJ's Decision, R. at 1086 (emphasis added) (citing R. at 972–82).) The ALJ observed that Dr. Schmale's opinion was "vague," as it "did not specifically express the most the claimant could do despite her impairment." (*Id*.) Nonetheless, the ALJ found the statement to be persuasive because it was supported by Dr. Schmale's own examination of Plaintiff and consistent with the record:

> The undersigned nevertheless considers the statement, which was supported by Dr. Schmale's own examination noting decreased lumbar forward flexion and extension, abnormal light touch in the right upper and lower extremity, pain in right in foot, abnormal ability to walk on toes, and stiffness and pain in lower back. The statement was also generally consistent with the remainder of the record, which reflected tenderness along the bilateral cervical paraspinous muscles, along the bilateral lumbar paraspinous muscles, and over the bilateral lumbar facet joints and bilateral sacroiliac joints. Accordingly, given its general consistency with the record, the undersigned finds the statement persuasive.

(*Id*.) In finding Dr. Schmale's statement persuasive, the ALJ did not otherwise qualify it. Although he observed that the statement was vague because it did not express the most Plaintiff could do despite her impairments, he didn't single out any impairment identified by Dr. Schmale as unsupported or inconsistent with the medical evidence of record. As written, the ALJ's

10

decision accepted Dr. Schmale's opinion as persuasive, including the portion indicating that Plaintiff's ailments could impair her ability to work in a job that requires walking or standing regularly. Yet, the ALJ did not carry this limitation into the RFC. While the RFC provides that Plaintiff "can stand/walk, in combination, only four of eight hours in an eight-hour workday" (*see id*. at 1079), it says nothing about the sustainability of regular walking or standing, that is, how long she can perform these activities continuously without needing to sit down. Nor does it address an "at will" option that would explain when the Plaintiff could choose to exercise the sit/stand option. *See Miller v. Colvin*, 997 F. Supp. 2d 908, 913 (N.D. Ind. Feb. 4, 2014) (finding that where neither the RFC nor the hypothetical specifies that the sit/stand option is "at will" or designates the frequency with which the claimant must alternate between sitting and standing, remand is required). Having accepted in the RFC that Plaintiff could not regularly stand or walk, even if the scope of such a limitation was not clearly defined by medical opinions, the ALJ was not free to omit such limitations from the RFC without an explanation regarding frequency and the apparent need to alternate between sitting and standing. *See Nimmerrichter v. Colvin*, 4 F. Supp. 3d 958, 969–70 (N.D. Ill. 2013) ("Despite adopting the medical expert's opinion, the ALJ excised this limitation—a significant one in the vocational expert's eyes—from it without explanation. This he could not do. He had to give good reasons for rejecting this portion of the medical expert's opinion. Moreover, he was not allowed to cherry-pick the parts of the medical expert's testimony that supported his finding of no disability and ignore the part that didn't." (citations to Seventh Circuit cases omitted)). Dr. Schmale's opinion is, at least to some extent, consistent with Plaintiff's testimony that she needs to alternate between sitting and standing. And while the ALJ had sufficient basis to reject Plaintiff's claim that she is essentially bedridden, as Plaintiff herself appears to concede, he did not separately consider to what extent her claim may

be consistent with the Dr. Schmale's opinion, if at all, concerning the need to alternate between sitting and standing. Yet according to SSR 83-12, the need to alternate the positions may be outcome determinative:

> In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for a time, but must then get up and stand or walk for a while before returning to sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work. (Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work.)
>
> There are some jobs in the national economy—typically professional and managerial ones—in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of performing it, or is capable of transferring work skills to such jobs, he or she would not be found disabled. However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a VS should be consulted to clarify the implications for the occupational base.

SSR 83-12 (S.S.A. 1983).

This case resembles *Allen v. Sullivan*, 977 F.2d 385 (7th Cir. 1992). In *Allen*, the Court of Appeals for the Seventh Circuit found inconsistencies in the ALJ's findings. While the ALJ concluded that the plaintiff could not stand for extended periods, he nevertheless found that the plaintiff could perform a full range of light work, which typically requires the ability to stand or walk for six hours in an eight-hour workday. That latter finding disregarded the fact that light work "would obviously seem to entail the capacity to walk and stand for 'extended periods,'" *id*. at 390, leading the court to conclude "that the administrative decision [was] not supported by substantial evidence." *Id*.

Similarly to *Allen*, the ALJ found persuasive Dr. Schmale's opinion that Plaintiff's ailments could limit her ability to perform work requiring regular standing and walking, but also concluded that, despite this limitation, she is capable of standing or walking for 4 hours in a workday. These findings are inconsistent, calling into question whether Plaintiff is capable of doing even less than the full range of light work. *See* 20 C.F.R. § 404.1567(b) ("Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing . . . ."); *see also Allen*, 977 F.2d at 389 ("'Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8 hour workday.'" (quoting SSR 83–10, Titles II and XVI: Determining Capability to Do Other Work—The Medical–Vocational Rules of Appendix 2.)).

Moreover, the cases in the Seventh Circuit support Plaintiff's argument that, given Dr. Schmale's opinion, the ALJ should have explained why he omitted a sit/stand option from the RFC. Although in the context of the discussion regarding sedentary work, the court in *Miller*, 997 F. Supp. 2d at 912–13, reiterated that "Social Security regulations require that an ALJ be clear and specific about the required frequency of alternating between standing and sitting in an RFC." *Cf. Hannah-Walker v. Colvin*, No. 2:12-CV-61-PRC, 2013 WL 5320664, at *13 (N.D. Ind. Sept. 23, 2013) ("Social Security Ruling 96–9p provides that, when an individual who is able to do less than a full range of sedentary work also has a requirement for alternate sitting and standing more frequently than with lunch and regular breaks, '[t]he RFC assessment must be specific as to the frequency of the individual's need to alternate between sitting and standing.'" (quoting SSR 96–9p, 1996 WL 374185, at *7 (July 2, 1996)). Referring to SSR 96–9p, which requires a specific assessment for the need to alternate between sitting and standing and possibly

13

consulting a vocational resource, the court noted that the Seventh Circuit has interpreted this social security ruling rather literally. *Id.* at 912 (citing to *Arnett v. Astrue*, 676 F.3d 586, 590 (7th Cir. 2012)). In other words, "'[a]n RFC must be specific about the required frequency of standing and sitting.'" *Id.* (quoting *Arnett*, 676 F.3d at 590). In the instant case, although the ALJ found Dr. Schmale's opinion persuasive, both the hypothetical question posed to the VE and the RFC are silent regarding any sit/stand option, contrary to Seventh Circuit precedent. Yet here, the ALJ did not seek any input from the VE regarding how Plaintiff's inability to stand or walk regularly would affect job availability, leaving the determination of whether Plaintiff is disabled incomplete.

What's more, Dr. Julovich expressed a similar opinion as Dr. Schmale concerning Plaintiff's ability to stand or walk regularly. Like Dr. Schmale, Dr. Julovich opined that Plaintiff could stand or walk for at least two hours in a workday, "but not continuously" (R. at 1989). Although the physical assessment notes from Dr. Julovich are substantially similar to those of Dr. Schmale (*cf*. R. at 1984–85 and 1989–90 *with* R. at 973–74 and 978–79) (except that Plaintiff refused to complete heel, toes, and tandem walking (R. at 1988)), the ALJ rejected Dr. Julovich's opinion as having only "limited persuasive value" (*Id*. at 1086), finding it inconsistent with her own examination and contrary to the overall evidence in the record. Moreover, although the ALJ stated that Dr. Julovich's opinion had only "limited persuasive value," he did not explain which portions of the opinion he found unpersuasive or how his reasoning differed from his acceptance of Dr. Schmale's similar finding. Insofar as Dr. Julovich's opinion provided additional support for a sit/stand option in the RFC, its rejection lacks a logical bridge, given that the ALJ found Dr. Schmale's opinion persuasive despite arising from similar exam observations and the same record.

14

In countering Plaintiff's arguments, the Commissioner points out that the ALJ substantially relied on Dr. Kwock's testimony who opined, as relevant here, that Plaintiff "could sit for 8 hours during the 8-hour workday, and stand/walk for 4 of those hours" (R. at 1121–22). The Commissioner argues that, juxtaposed with this opinion, Plaintiff is inviting the Court to weigh evidence, which the Court may not do. But the Commissioner is mistaken on this point: the ALJ found both Dr. Kwock's and Dr. Schmale's opinions persuasive so no weighing is required to maintain that Dr. Schmale's opinion should have been incorporated into the RFC. In fact, Dr. Schmale's opinion that Plaintiff cannot stand or walk regularly does not contradict Dr. Kwock's opinion that she can stand or walk for 4 hours in a workday; rather, Dr. Schmale's opinion supplements Dr. Kwock's. Although the ALJ need explain his ruling only minimally, *see Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024) ("Time and time again, we have emphasized that social-security adjudicators are subject to only the most minimal of articulation requirements."), the ALJ failed to base his ruling on substantial evidence.

Since the case is being remanded, the Court need not address Plaintiff's argument about the ALJ's credibility assessment. Nevertheless, the Court would like to highlight the ALJ's treatment of Plaintiff's full-time work before the alleged onset date. Plaintiff testified that she sustained a work-related injury in 2011 and continued working for the next seven years until the pain became too severe. The ALJ cited this evidence as part of his reasoning in discrediting Plaintiff's allegations of disabling back pain. (ALJ's Decision, R. at 1085.) However, the ALJ did not explain the relevance of this evidence, leaving the impression that Plaintiff's decision to work through pain could be used against her. *Cf. Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015) ("[T]he ALJ reasoned that Hill was stretching the truth about her neck pain because she still wanted to work, and because she performed manual labor for many years after her neck

15

surgery. This logic is backward: a 'claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability.'" (quoting *Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983)). On remand, if Plaintiff's work history before the alleged onset date is considered, the relevance of this evidence should be clearly explained to avoid any potential legal issues.

## F. Conclusion

For these reasons, the Court REVERSES the Agency's decision and REMANDS this matter to the Agency for further proceedings consistent with this opinion. The Clerk is directed to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: November 6, 2025

                                                        /s/ JON E. DEGUILIO  
                                                        Judge  
                                                        United States District Court